IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GARY L. SCARBERRY, #154496      :

       Plaintiff,                :

vs.                          :       CIVIL ACTION 05-0516-CG-C

DR. ROBERT BARNES, et al.,      :

       Defendants.           :

REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 1983 by an Alabama prison inmate, proceeding *pro se* and *in forma pauperis*, which has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Plaintiff claims that Defendant Robert Barnes, M.D., and Defendant Linda Shipman, R.N., H.S.A., denied him appropriate medical care while he was incarcerated at the Fountain Correctional Facility in Atmore, Alabama. (Doc. 1 at 4-6, Complaint, Attachment at 4-5, Affidavit of Plaintiff). Plaintiff alleges that the actions of Defendants Barnes and Shipman violated the Eighth Amendment prohibition against cruel and unusual punishment, as well as the Due Process Clause, and as relief, Plaintiff seeks nominal, compensatory, and punitive damages, and "any other [relief] that the Court sees fit to award Plaintiff." (Doc. 1 at 7-8).

Defendants Barnes and Shipman filed an Answer (Doc. 11, Answer), and a Special Report (Doc. 12, Special Report) on February 24, 2006, denying that they violated

Plaintiff's constitutional rights and contending that Plaintiff has failed to state a claim. Additionally, Defendants have asserted numerous affirmative defenses including, in part, lack of subject matter jurisdiction, respondeat superior, qualified immunity, absolute immunity, discretionary function immunity, and state agent immunity. (Docs. 11 and 12). Defendants also assert that Plaintiff has failed to plead his claims with sufficient specificity, failed to comply with the requirements of the Prison Litigation Reform Act,[1] failed to mitigate his damages, was contributorily negligent, and assumed the risk. (Id.). Plaintiff filed an Objection to Defendants' Answer and Special Report on May 16, 2006, reiterating his original claims. (Doc. 15, Objection).

On May 24, 2006, this Court entered an Order converting Defendants' Special Report and Answer to a Motion for Summary Judgment. (Doc. 16, Order). Plaintiff filed a Response in opposition to Defendants' Motion for Summary Judgment on June 16, 2006. (Doc. 20, Response in Opposition to Motion for Summary Judgment). In accordance with the Court's Order, Defendants' Motion for Summary Judgment was taken under submission following the filing of Plaintiff's "Response to Motion for Summary Judgment" on June 16, 2006. After consideration by the Court, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants

---

[1]Defendants contend that Plaintiff's claim is barred because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. (Doc. 12 at 6). However, Defendants have failed to put forth any evidence of a state grievance procedure available for Alabama prisoners, as well as any evidence of Plaintiff's failure to comply with such procedure.

Robert Barnes, M.D., and Linda Shipman, R.N., H.S.A., and against Plaintiff Gary L. Scarberry on all claims.

## I. FACTS

On or around October 28, 2005, while incarcerated at Fountain Correctional Facility ("Fountain"), Plaintiff claims that he was denied appropriate medical care by Defendants' failure to treat him for shortness of breath, itching, difficulty swallowing, muscle spasms in his legs and arms, eye and ear problems, and numbing of his feet. (Doc. 1 at 5). Plaintiff also complains that he asked Dr. Barnes to administer tests to determine what is wrong with him, and to send him to medical specialists outside the prison, but that Defendants refused to do so. (Doc. 1, Attachment at 4).

Although Plaintiff's allegations of how he has been given inadequate medical care at Fountain are extremely vague, he does allege that he believes his health issues stem from receiving a certain medication at a previous prison. (Doc. 1, Attachment at 2-4). Specifically, Plaintiff asserts that in 2002, while incarcerated at Bullock Correctional Facility ("Bullock"), he was given Lindane lotion for an extremely bad rash on his body. (Id.). Plaintiff contends that he was instructed to leave the lotion on for much longer than it should have been on his skin, and that he suffered health injuries as a result. Plaintiff believes that the lotion he received at Bullock has affected his lungs, eyes, nerves, and heart rate.[2] (Doc. 1, Attachment at 4).

---

[2]It should be noted that Plaintiff has not attempted to assert a claim regarding any health care he received or failed to receive prior to being incarcerated at Fountain. (Doc. 1, Attachment

Since being incarcerated at Fountain, Plaintiff asserts that Defendants Barnes and Shipman have denied him appropriate care for his medical complaints of shortness of breath, itching, difficulty swallowing, muscle spasms in his legs and arms, eye and ear problems, and numbness in his feet.  (Doc. 1, Attachment at 4-5).  Plaintiff acknowledges that he has been given medical treatment, stating "[t]he Defendant Barnes has treated Plaintiff for different things, but he has fail [sic] to see by Plaintiff's Medical Records that he has been treated with a dangerous product, Lindane, and this dangerous product [Lindane] has caused several medical problems in the Plaintiff's life and Doctor Barnes as fail [sic] to notice this in Plaintiff's Medical Records."  (Doc. 15 at 4, Plaintiff's Objections to Defendant's Special Report and Answer).  Plaintiff contends that Defendants' refusal to allow Plaintiff to see medical specialists outside Fountain is deliberate indifference to his medical needs.  (Doc. 1, Attachment at 5).

According to Defendants, Plaintiff has been seen and evaluated by the medical or nursing staff, and has been referred to appropriate care providers and given appropriate care, each time he registered any health complaint at Fountain.  (Doc. 12, Attachment 2 at 3, Affidavit of Robert Barnes, M.D.).  Defendants indicate that Plaintiff has been diagnosed with a medical condition known as degenerative disc disease.  (Id.).  To determine the extent of this condition, Dr. Barnes referred Plaintiff for extensive specialty evaluation.  (Id.).  On December 15, 2005, Plaintiff was afforded an MRI of his lumbar

_____

at 3).

spine at Atmore Community Hospital.  Dr. Larry J. Arcement reviewed the MRI and determined that Plaintiff had mild disc desiccation, more prominently involving L4-5 and L5-S1, with L5-S1 showing moderate narrowing of the disc space.  (Id.).  According to Dr. Barnes, Dr. Arcement found very minimal central disc protrusion of L5-S1, which does not indent the thecal sac or impact any nerve root.  (Id. at 3-4).  Other than these findings, there was no disc protrusion and the foramina was patent.  (Id. at 4).

Subsequently, Plaintiff was afforded x-ray evaluation by a radiologist, Dr. Thomas J. Payne, III, who determined, aside from the above noted degenerative disc disease, that Plaintiff's vertebrae were well aligned and that the x-ray showed no evidence of fracture or destructive bone disease, and ultimately determined Plaintiff's study to be normal. (Id.).  According to Dr. Barnes, surgery was not indicated for Plaintiff's degenerative disc disease, and Dr. Barnes treated any pain associated with Plaintiff's condition with the following medications: Percogesic, Motrin, Feldene, and Flexril.  (Id.).

Regarding additional medical care which Plaintiff has received at Fountain, Dr. Barnes removed a mole from Plaintiff's right hip on December 16, 2005.  (Id.).  The mole was then evaluated and found to be benign by a pathologist, Dr. John N. Elgin.  (Id.). Subsequently, on December 21, 2005, Dr. Barnes examined Plaintiff and found his right hip was inflamed.  (Id.).  The area was cultured, and it was discovered that Plaintiff had developed a staff infection, which was successfully treated by the antibiotic, Bactrim. (Id.).

Regarding Plaintiff's alleged complaints of shortness of breath and itching, Dr.

5

Barnes avers that Plaintiff has never complained to him of these difficulties.  (Id.).
Further, Dr. Barnes states under oath that he has found no indication of any medical
condition which would cause Plaintiff difficulty in swallowing.  (Id.).  Regarding
Plaintiff's complaints of vision problems, Dr. Barnes states that Plaintiff has been
evaluated by an optometrist on numerous occasions and his corrective lenses have been
adjusted as warranted.  (Id.).

Dr. Barnes believes that all medical conditions and complaints made known by
Plaintiff have been evaluated and treated in a timely and appropriate fashion at Fountain.
(Id. at 4-5).  At all times, according to Dr. Barnes, he and Defendant Shipman have
exercised the same degree of care, skill, and diligence as other similarly situated
healthcare providers would have exercised under the same or similar circumstances.  (Id.
at 5).  As a result of Plaintiff's claim that he has been denied medical care, Plaintiff is
requesting that the Court award an unspecified amount of nominal, compensatory, and
punitive damages. (Doc. 1 at 7-8).

## SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins
with these basic principles.  The Federal Rules of Civil Procedure grant this Court
authority under Rule 56 to render "judgment as a matter of law" to a party who moves for
summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if any,
show that there is no genuine issue as to any material fact. . . .'"  Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c)).  The Court must view the

evidence produced by "the nonmoving party, and all factual inferences arising from it, in

the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir.

1989).

> However, Rule 56(e) states that:

>> an adverse party [to a motion for summary judgment] may not
>> rest upon the mere allegations or denials of the adverse
>> party's pleading, but the adverse party's response, by
>> affidavits or as otherwise provided in this rule, must set forth
>> specific facts showing that there is a genuine issue for trial.  If
>> the adverse party does not so respond, summary judgment, if
>> appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also Celotex Corp.</u>, 477 U.S. at 325-27.  "[T]here is no issue for

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party.  If the evidence is merely colorable or is not significantly probative,

summary judgment may be granted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

249-50 (1986) (internal citations omitted).  "Summary judgment may be granted against a

party who fails to establish the existence of an element essential to that party's case and

on which that party will bear the burden of proof at trial."  <u>Liberty Mut. Fire Ins. Co. v.

Sahawneh</u>, 2001 WL 530424, *1 (S.D. Ala. May 11, 2001) (citing <u>Anderson</u>, 477 U.S. at

249-50).

## III. DISCUSSION

In this action, Plaintiff seeks redress for an alleged constitutional deprivation

pursuant to 42 U.S.C. § 1983.  Specifically, Plaintiff alleges that Defendants' deliberate

indifference to his serious medical needs while incarcerated at Fountain, *i.e.*, the denial of

appropriate medical care for his alleged difficulty breathing and swallowing, eye and ear

problems, itching, numbness in his feet, and muscle spasms in his arms and legs on or

around October 28, 2005, violated his rights under the Eighth and Fourteenth

Amendments.[3]  For the reasons set forth below, the Court finds that Plaintiff's allegations

fail to establish any constitutional violation by Defendants.  Thus, it is recommended that

Defendants' Motion for Summary Judgment be granted.

<u>Denial of Adequate Medical Care</u>

As discussed above, in this action, Plaintiff alleges that Defendants were

"deliberately indifferent" to his serious medical needs in violation of the Eighth

Amendment and Fourteenth Amendment by failing to provide proper medical treatment

for him during his incarceration at Fountain Correctional Facility.  (Doc. 1).  Specifically,

---

[3]Plaintiff does not state whether he is suing Defendants in their official and/or individual capacities in this lawsuit.  In any event, Defendants have asserted various types of immunity, however, as private entities, Dr. Robert Barnes and Nurse Linda Shipman are not entitled to immunity, whether qualified or absolute.  <u>See Swann v. Southern Health Partners, Inc.</u>, 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP [a private corporation employed by the county to provide medical care to inmates at the county jail] is not entitled to assert a qualified immunity defense."); <u>Hinson v. Edmond</u>, 205 F.3d 1264, 1265 (11th Cir. 2000) (a "privately employed prison physician [ ] is ineligible to advance the defense of qualified immunity"); <u>Edwards v. Alabama Dep't of Corrections</u>, 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (a "private entity" contracting with a state to provide medical services to state inmates "is not entitled to qualified immunity....").  With respect to absolute immunity, Defendants have cited no case, and the Court is aware of no case, extending absolute immunity to privately employed medical companies or privately employed physicians and nurses providing medical services to state inmates.

Plaintiff alleges that he has had serious medical problems with difficulty breathing and swallowing, arm and leg muscle spasms, numbness in his feet, eye and ear problems and itching, and that Defendants have delayed his treatment, as well as provided him with inadequate medical care.  (Doc. 1, Attachment at 5).

Although Plaintiff has raised these claims under the Eighth and Fourteenth Amendments, it is the Eighth Amendment that applies here.  The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs."  Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976)).  In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983.

To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff must first demonstrate the existence of an

"objectively serious medical need."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir.

2003).  "Because society does not expect that prisoners will have unqualified access to

health care, deliberate indifference to medical needs amounts to an Eighth Amendment

violation only if those needs are 'serious.'"  Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d

1176, 1186 (11th Cir. 1994) (quoting Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995,

1000, 117 L. Ed. 2d 156 (1992)).  "[A] 'serious' medical need is one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention."  Id. at 1187 (quoting

Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D.N.H. 1977)).   As noted by the Ninth

Circuit, "[a] 'serious' medical need exists if the failure to treat a prisoner's condition

could result in further significant injury or the 'unnecessary and wanton infliction of

pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429

U.S. at 104, 97 S. Ct. at 291)(overruled on other grounds by WMX Technologies, Inc. v.

Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)).

    In order to meet the required subjective element of an Eighth Amendment denial of

medical care claim, a plaintiff must demonstrate "deliberate indifference" to a serious

medical need.  Farrow, 320 F.3d at 1243.

> In Estelle, the Supreme Court established that "deliberate
> indifference" entails more than mere negligence.  Estelle, 429
> U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct.
> 1970.  The Supreme Court clarified the "deliberate
> indifference" standard in Farmer by holding that a prison
> official cannot be found deliberately indifferent under the
> Eighth Amendment "unless the official *knows of* and

> *disregards an excessive risk to inmate health or safety;* the
> official must both be aware of facts from which the inference
> could be drawn that a substantial risk of serious harm exists,
> and he must also draw the inference." <u>Farmer</u>, 511 U.S. at
> 837, 114 S. Ct. 1970 (emphasis added).  In interpreting
> <u>Farmer</u> and <u>Estelle</u>, this Court explained in <u>McElligott</u> that
> "deliberate indifference has three components: (1) subjective
> knowledge of a risk of serious harm; (2) disregard of that risk;
> (3) by conduct that is more than mere negligence."
> <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221 F.3d at 1258
> (stating that defendant must have subjective awareness of an
> "objectively serious need" and that his response must
> constitute "an objectively insufficient response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46 (emphasis in original).

For purposes of this analysis, the Court assumes, without deciding, that Plaintiff has demonstrated an "objectively serious medical need" in order to satisfy the first component of his Eighth Amendment claim.  The Court turns its focus, instead, to Plaintiff's claim that Defendants were deliberately indifferent to his serious medical need for treatment for his health problems.

Plaintiff maintains that he has suffered from difficulty breathing and swallowing, muscle spasms in his legs and arms, numbness in his feet, itching, and ear and eye problems, all, in his opinion, stemming from the application of a medication identified by Plaintiff as Lindane lotion, which he received while incarcerated at Bullock Correctional Facility during 2002.  (Doc. 1, Attachment at 2-3).  Plaintiff complains that, since he has been incarcerated at Fountain, he has not received adequate medical care.  (Doc. 1, Attachment).  Plaintiff's medical records, however, reflect extensive medical treatment, including an MRI, an x-ray, and a mole removal, just in the short time in which he has

11

been incarcerated at Fountain. (Doc. 12, Attachments 3-18, Medical Records).

Regarding Plaintiff's complaints of leg and arm muscle spasms and numbness of his feet, Plaintiff's medical records reflect that he suffers from degenerative disc disease. (Doc. 12, Attachment 2 at 3). In determining the extent of Plaintiff's condition, Dr. Barnes referred him for extensive specialty evaluation. (Id.). On December 15, 2005, Plaintiff was afforded an MRI of his lumbar spine at Atmore Community Hospital. (Id., Attachment 4 at 17-21, 24-26, and 28-29, Attachment 7 at 4-5, Attachment 8 at 17-21, 24-26, 28-29). Dr. Larry J. Arcement reviewed the MRI and determined that Plaintiff had mild disc desiccation, more prominently involving L4-5 and L5-S1, with L5-S1 showing moderate narrowing of the disc space. (Id.). According to Dr. Barnes, Dr. Arcement found very minimal central disc protrusion of L5-S1, which does not indent the thecal sac or impact any nerve root. (Doc. 12, Attachment 2 at 3-4). Other than these findings, there was no disc protrusion and the foramina was patent. (Id. at 4).

Subsequently, Plaintiff was afforded x-ray evaluation by a radiologist, Dr. Thomas J. Payne, III, who determined, aside from the above noted degenerative disc disease, that Plaintiff's vertebrae were well aligned and that the x-ray showed no evidence of fracture or destructive bone disease, and ultimately determined Plaintiff's study to be normal. (Id.). Further, according to Dr. Barnes, surgery was not indicated for Plaintiff's degenerative disc disease, and he treated any pain associated with Plaintiff's condition with the following medications: Percogesic, Motrin, Feldene, and Flexril. (Id., Attachment 13 at 11-20, Attachment 18 at 18-20).

Regarding additional medical care which Plaintiff has received at Fountain, Dr. Barnes removed a mole from Plaintiff's right hip on December 16, 2005.  (Doc. 12, Attachment 2 at 3).  The mole was then evaluated and found to be benign by a pathologist, Dr. John N. Elgin.  (Id., Attachment 7 at 23-24).  Subsequently, on December 21, 2005, Dr. Barnes examined Plaintiff and found his right hip was inflamed.  (Doc. 12, Attachment 2 at 3).  The area was cultured, and it was discovered that Plaintiff had developed a staff infection, which was successfully treated by the antibiotic, Bactrim. (Id.).

Although Plaintiff raises claims of Defendant's failure to treat him for shortness of breath and itching, Dr. Barnes has stated that Plaintiff never complained to him with these symptoms.  (Id.).  Additionally, Dr. Barnes has averred that he has found no indication of any medical condition which would cause Plaintiff difficulty in swallowing.  (Id.). Regarding Plaintiff's complaint of vision problems, Plaintiff has been regularly seen by an optometrist and has had his corrective lenses adjusted as needed.  (Id., Attachment 4 at 22-23, 27, 30, Attachment 8 at 22, 27, 30).  Significantly, Plaintiff's medical records do not provide any evidence of the other medical conditions, including itching, difficulty breathing and swallowing, and "ear problems," of which Plaintiff is complaining in this action.  (Doc. 12, Attachments 3-18).

It is Defendants' contention that all medical conditions and complaints made known by Plaintiff have been evaluated and treated in a timely and appropriate fashion at Fountain.  (Doc. 12, Attachment 2 at 4-5).  After reviewing the entire record in this

action, including Plaintiff's medical records, the Court agrees.  It appears that Plaintiff

was appropriately given medical appointments, diagnostic procedures, and medications

when he registered a complaint, and moreover, Plaintiff has offered nothing more than his

own opinions that he did not receive proper care.

Having considered the evidence in this action in the light most favorable to

Plaintiff, the Court finds that Plaintiff has failed to establish an Eighth Amendment

violation by these Defendants.  As discussed above, in order to satisfy the subjective

element of an Eighth Amendment claim, Plaintiff must show that Defendants knew of and

disregarded "an excessive risk to [his] health or safety."  Farrow, 320 F.3d at 1245.

Stated differently, Plaintiff must show that Defendants had "subjective

knowledge of a risk of serious harm," that Defendants disregarded that risk, and that

Defendants did so "by conduct that is more than mere negligence."  Id.  The record here

is devoid of evidence that Defendants had subjective knowledge of, and disregarded, a

risk of serious harm to Plaintiff from his alleged eye and ear problems, itching, muscle

spasms in his arms and legs, numbness, or difficulty breathing and swallowing.  To the

contrary, the record shows that Defendants provided Plaintiff with appropriate medical

care, and with respect to Plaintiff's degenerative disc disease, Defendants  treated

Plaintiff with medications, specialist evaluations, and diagnostic procedures.  There is no

evidence that Defendants were deliberately indifferent to any of Plaintiff's medical

problems, or that they ever stopped trying to improve his condition.

The Eleventh Circuit has recognized that "when a prison inmate has received

14

medical care, courts hesitate to find an Eighth Amendment violation."  Waldrop v. Evans,

871 F.2d 1030, 1035 (11th Cir. 1989).  The fact that a plaintiff may disagree with the

efficacy of the treatment recommended or simply prefer a different course of treatment

does not state a valid claim of medical mistreatment under the Eighth Amendment.  See,

e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("the question of whether

governmental actors should have employed additional diagnostic techniques or forms of

treatment 'is a classic example of a matter for medical judgment' and therefore not an

appropriate basis for grounding liability under the Eighth Amendment.") (quoting Estelle,

429 U.S. at 107); Del Muro v. Federal Bureau of Prisons, 2004 WL 1542216, *4 (N.D.

Tex. 2004) (unpublished) ("[i]t is well-established that a difference in opinion or a

disagreement between an inmate and prison officials as to what medical care is

appropriate for his particular condition does not state a claim for deliberate indifference to

medical needs.").

Moreover, it is well established that "[s]imple medical malpractice . . . does not

rise to the level of a constitutional violation."  Waldrop, 871 F.2d at 1035.  Thus, even if

the Court were to assume that, at times, Plaintiff had been incorrectly diagnosed and/or

treated by Dr. Barnes and Nurse Shipman, of which there is no evidence, Eighth

Amendment liability cannot be grounded on "mere negligence."  Farrow, 320 F.3d at

1245.  While the Court recognizes that Plaintiff may have experienced difficulty

breathing and swallowing, numbness, leg and arm muscle spasms, eye and ear problems,

and itching, there is no evidence that Defendants refused to treat him or that they engaged

in "deliberately indifferent" delay in treating any of these medical problems.

Inasmuch as Plaintiff's own medical records establish that he received appropriate treatment for all health complaints registered, and in fact, extensive medical treatment for his degenerative disc disease, Plaintiff has failed to meet the subjective element of "deliberate indifference" necessary to constitute an Eighth Amendment violation.  Thus, Defendants are entitled to summary judgment on all of Plaintiff's claims.

## V.  CONCLUSION

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendants, Robert Barnes, M.D., and Linda  Shipman, R.N., H.S.A., be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 31st day of July, 2006.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      Objection.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.